MARCUS SAYRE and others, executors &c.

*vs.*

JAMES R. SAYRE and others.

A testator gave the residue of his estate to his executors, in trust to pay one-sixth thereof to the children of a deceased daughter, and to pay the income of the remaining five shares to his children during their natural lives, and then their shares to go to their issue respectively; and if any of his children should die leaving no lawful issue, the share of such child should sink into the residue; and, in order to make an equal division of his estate, that any obligations he might hold against any of his children, and all advances to any of them charged against them in his accounts, should be deducted from their respective shares, and income allowed them only on the residue, and the lawful issue of any child should take only such residue. At the time of testator's death, four of his children were indebted to him on obligations held by him, one son to an amount exceeding his share of the estate; that son had a daughter (his only child) living when the will was made, but she has since died. The testator assigned as a gift to one of his daughters a bond and mortgage given by her husband (she joining in the latter) on his property, but whether this was charged to her in testator's accounts does not appear.—*Held*,

(1) That if no such charge against her was made, it cannot be deducted from her share.

(2) That the son who was indebted to the estate in excess of his share, must pay such excess, and no more.

(3) *Query*, whether the English rule that "dying without leaving issue" means *having had* no lawful issue, and hence that the death of such issue during the parent's life-time, does not destroy such issue's prior, vested interest, has been adopted here.

Bill for construction of will &c.

*Mr. A. Q. Keasbey*, for complainants.

*Mr. F. Frelinghuysen*, for James R. Sayre and Mrs. Neville.

THE CHANCELLOR.

Moses Sayre, deceased, late of Newark, by his will, after certain provision for his widow for her life (she is now dead)

gave all the residue of his estate to his executors, Marcus Sayre and James Higbie and the survivor of them in trust, to pay over one-sixth of it to the children of his deceased daughter, and to pay the interest, income and profits arising from the remaining five shares, to and among his children for and during their natural lives, and on their death their shares to go to their issue. And he provided that if any of his children should die leaving no lawful issue, the share of such child should sink into the residue and be disposed of under the will. He then declared that it was his intention to make an equal division of his estate among his children, and to that end directed that any obligations he might hold against either of them and all advances he might have made to any of them and charged against them in his accounts, should constitute a portion of their respective shares, and that they should receive the income only of the residue of their respective shares after deducting the amount of such advances, and that the lawful issue of any child should take the principal of their parents' share after such deductions should have been made.

At the time of the testator's death four of his children were indebted to him on their obligations held by him— one of them to an amount exceeding his share of the estate. That son had a child (a daughter) living when the will and the codicil thereto were made, but she has since died.

The testator assigned as a gift to one of his daughters a bond and mortgage given by her husband (she joining in the latter) on his property in Pennsylvania. Whether the testator made any charge of this gift against her in his accounts does not appear.

The questions propounded are, What is the duty of the executors with respect to the shares of those children whose obligations the testator held, and as to the gift to the testator's daughter?

The testator declared that it was his intention to make an equal division of his property among his children, and that to that end they were to be charged with all the advances.

Sayre *v.* Sayre.

made to them on that account and charged against them in his accounts, and any obligations he should hold against them.   What, then, is the share of any of his children in his estate ?   It is the one-sixth, less the amount of advances charged against him or her in the testator's accounts, and the amount of any obligations held by the testator against him or her.   In other words, it is the difference, if any there be, between the amount of the one-sixth and the advances and obligations to and against the donee thereof. In the case of the son before mentioned, the sixth has already been received in his obligations held by the testator.   Had his daughter lived to survive him, she, clearly, would have had no claim upon the testator's estate with respect to the share.   The intention of the testator was to subject to the limitations declared in his will only such shares or parts of shares as might at his death be coming to his children out of his estate after making the deductions.   It was such shares or parts of shares, and them alone, that he intended to subject to administration under the trust.

The " share " that was to sink into the residue in case of the death of the child without issue, was that on which the child would, under the will, be entitled to receive the income for life at the hands of the executors as trustees, and which was limited over to the issue of the child if it should leave any.   He first declared in the will what shares his children were to have, and to what limitations they were to be subject, and then declared how the shares were to be constituted.   The construction is to be the same as if he had first declared how the shares were to be constituted, and then declared the limitations to which they were to be subject.   He did not intend that any of his children should be required to furnish security to his executors for the payment, in the contingency of death without issue, of the amounts deducted, nor that they should be required to pay the amount deducted in any event, to any one, but the

deductions are treated as a permanent reduction *pro tanto* of the amount of the share.

It is laid down as a rule of construction of wills in the English courts, that the word "leaving" in a gift upon death without leaving issue, will, if possible, be so construed as not to destroy prior vested interests, and it will, in fact, be taken as equivalent to "without having had children who take vested interests." Thus, where there is a bequest or devise to one for life, and after his death to his children, whether a particular time is fixed for the vesting of the share or not, followed by a gift over upon the death of the life tenant without leaving children, the children of the life tenant, either at their birth or at the particular time appointed, as the case may be, take indefeasible interests not liable to be defeated by death in the life-time of the life tenant. *Theobald on Wills 381 ; Hawkins on Wills 217*, and cases cited.

*In re Brown's Trust, L. R. (16 Q. B.) 239*, a testator gave a fund to trustees to pay the dividends to his daughter for life, and, after her decease, to transfer the principal equally amongst all her children, whether by her then putative husband or any other person whom she might marry, who should attain to the age of twenty-one years, their executors, administrators and assigns, and provided that in case his daughter should die leaving no issue, the principal should go to the testator's other children. His daughter, at the time of making the will, had a son of four years of age by her putative husband. It was held (her putative husband being dead, and she being sixty-seven years old and having no other child) that the son, who had attained to the age of twenty-one years, was entitled absolutely to the capital, the word "leaving" being construed as "having." See, also, *Treharne* v. *Layton, L. R. (10 Q. B.) 459*. This rule, however, has not, that I am aware, been adopted in our courts, and it seems to me as a rule far more likely to defeat than to effectuate the intention of testators.

As to the gift to the testator's daughter: If the testator has not charged that against her as an advance in his

accounts, it is not within the description of the advances which he intended should be deducted.

Of course the son is to be required to pay what he owes the estate over and above the amount of his share.